John D. WATTS, Plaintiff–Appellant,

v.

XL SYSTEMS, INC., Defendant–Appellee.

No. 99–1526.

United States Court of Appeals, Federal Circuit.

Nov. 14, 2000.

Rehearing and Rehearing En Banc Denied Jan. 16, 2001.

James H. Riley, II, Shook, Hardy & Bacon L.L.P., of Houston, Texas, argued for plaintiff-appellant.

Charles B. Walker, Jr., Fulbright & Jaworski L.L.P., of Houston, Texas, argued for defendant-appellee. With him on the brief was Winstol D. Carter, Jr.

Before BRYSON, GAJARSA, and LINN, Circuit Judges.

LINN, Circuit Judge.

John D. Watts seeks review of a final decision of the District Court for the Eastern District of Texas. *See Watts v. XL Systems, Inc.,* No. 97–CV–261 (E.D.Tex. July 15, 1999). The district court held on summary judgment that claims 2 and 18 of U.S. Patent No. 4,813,717 (" '717 patent") and claim 1 of U.S. Patent No. 5,143,411 (" '411 patent") were written in means-

plus-function format and were not infringed by the products of XL Systems, Inc. ("XL"). *See Watts*, slip op. at 3–5. In light of this holding, the district court declined to address XL's alternative argument of invalidity, finding it moot. *See id.* at 5. We disagree with the district court's holding that the sealing limitation of the claims is in means-plus-function format, but nonetheless agree with the district court's judgment holding the claims in issue not infringed. Accordingly, we need not address XL's alternative argument of invalidity.[1]

## BACKGROUND

Both the '717 patent and the '411 patent, as well as the accused products, are directed toward connecting sections of pipe together. Their primary application is in the oil well industry in which miles of pipe may need to be dropped into a hole. Such a pipe consists of a large number of sections, called joints, which are typically forty feet long and twenty inches wide and are connected together. The joints are commonly connected together in one of two ways. The first uses an integral connection in which the joints themselves have mating threads allowing the joints to be connected directly to each other. The second uses a coupling connection in which the joints still have threads, but are connected to a coupling which is disposed between two successive joints. The coupling has a much smaller length than the joint. The '717 and '411 patents disclose joints and couplings with increased sealing and strength characteristics to accommodate the large and varied forces to which oil well pipes are exposed.

Watts is the inventor of both the '717 patent and the '411 patent, which is a continuation-in-part of the '717 patent.

This appeal concerns only claims 2 and 18 of the '717 patent and claim 1 of the '411 patent. Each of the three claims includes substantially the same two functional statements and these statements are the only limitations that the parties contest. The parties agree that claim 18 of the '717 patent is representative. Claim 18 reads as follows:

> 18. A high efficiency connection for joints of oilwell tubing or the like, comprising: at least two pipes joined together and forming joints of pipe, each joints of pipe having a first end with no increase in wall thickness relative to the average pipe wall thickness and formed with tapered internal threads; the joints each having a *second end formed with tapered external threads dimensioned such that one such joint may be sealingly connected directly with another such joint;* the threads being of sufficient length and taper such that the pipe wall strength of the first end in the area of the smallest diameter of thread engagement is at least three-fourths of the average pipe wall strength of the joints of pipe.

'717 patent, col. 8, ll. 6–18 (emphasis added). The first functional statement, as identified by the district court and the parties, is indicated above by underlining. The second functional statement is the text that follows the underlined portion.

The parties agreed to three stipulations regarding the allegedly infringing products. The parties stipulated that XL: (1) does not infringe any of the three claims when both of the functional statements are construed as means-plus-function limitations; (2) does not use differing taper angles between connecting pipe ends; and (3) does not use any structure that is

---

1. XL admits in its brief that its invalidity argument was advanced as an alternative argument in its summary judgment motion. *See Watts*, slip op. at 2, 5. Having upheld the district court's judgment of non-infringement, it is settled that we need not address XL's alternative argument of invalidity. *See Hill-*

*Rom Co. v. Kinetic Concepts, Inc.,* 209 F.3d 1337, 1344, 54 USPQ2d 1437, 1442 (Fed.Cir. 2000) (upholding the district court's judgment of non-infringement and stating that this court need not address the alternative argument of invalidity, raised as an affirmative defense at the district court).

insubstantially different from the use of differing taper angles.

The district court construed both of the functional statements to be means-plus-function limitations and held that they were limited to the disclosed embodiments. The district court held that in the alternative, if 35 U.S.C. § 112, paragraph 6 did not apply, both of the functional statements were limited by the specification and prosecution history to the disclosed embodiments. Based on its claim construction and the stipulations, the district court held that XL did not infringe any of the claims at issue. Watts appeals the district court's judgment. We have exclusive jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. Standard of Review

■ We review a district court's grant of summary judgment *de novo*, reapplying the standard applicable at the district court. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1301, 50 USPQ2d 1429, 1434 (Fed.Cir.1999) (citing *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994)). Summary judgment is only appropriate when "there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). We draw all reasonable inferences in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The determination of infringement is a two-step process. First, this court construes the claims and, second, we compare the properly construed claims to the accused device. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc).

### B. Applicability of 35 U.S.C. § 112, paragraph 6

Section 112, paragraph 6 provides that "[a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof." 35 U.S.C. § 112, para. 6 (1994). In *Personalized Media Communications, LLC v. Int'l Trade Comm'n*, 161 F.3d 696, 48 USPQ2d 1880 (Fed.Cir.1998), building upon a line of cases interpreting 35 U.S.C. § 112, paragraph 6,[2] we stated that the failure to use the word "means" in a claim element created a rebuttable presumption that 35 U.S.C. § 112, paragraph 6 did not apply. *See Personalized Media*, 161 F.3d at 703–04, 48 USPQ2d at 1886–87. We also reiterated that in determining whether a presumption is rebutted, "the focus remains on whether the claim … recites sufficiently definite structure." *Id.* at 704, 161 F.3d 696, 48 USPQ2d at 1887. We noted, however, that the claim limitation need not "connote a precise physical structure." *Id.* at 705, 161 F.3d 696, 48 USPQ2d at 1888. The following year, we further clarified that the presumption that § 112, paragraph 6 did not apply could be rebutted by showing that the claim element recited a function without reciting sufficient structure for performing that function. *See Rodime PLC v. Seagate Tech., Inc.*, 174 F.3d 1294, 1302, 50 USPQ2d 1429, 1434 (Fed.Cir.1999) (explaining the converse rules for rebutting a presumption that § 112, paragraph 6 does apply). As an aid in determining whether sufficient structure is in fact recited by a term used in a claim limitation, this court has inquired into whether the "term, as the name for structure, has a reasonably

---

**2.** (a) *See, e.g., Laitram Corp. v. Rexnord, Inc.*, 939 F.2d 1533, 19 USPQ2d 1367 (Fed.Cir. 1991); *Greenberg v. Ethicon Endo–Surgery, Inc.*, 91 F.3d 1580, 39 USPQ2d 1783 (Fed.Cir. 1996); *Cole v. Kimberly–Clark Corp.*, 102 F.3d 524, 41 USPQ2d 1001 (Fed.Cir.1996); *Mas–*

*Hamilton Group v. LaGard, Inc.*, 156 F.3d 1206, 48 USPQ2d 1010 (Fed.Cir.1998); *Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.*, 157 F.3d 1311, 48 USPQ2d 1099 (Fed.Cir. 1998).

well understood meaning in the art." *Greenberg,* 91 F.3d at 1583, 39 USPQ2d at 1786 (applying this test to the term "detent mechanism"). If § 112, paragraph 6 applies, then we follow the guidelines to claim construction specified in the statute: "such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, para. 6. If § 112, paragraph 6 does not apply, then our precedent for the construction of limitations that are not means-plus-function limitations is applied in the customary way.

■ In this case, in determining that the sealingly connected limitation[3] should be construed as a means-plus-function limitation, the district court stated that the limitation was "drafted as a function to be performed . . . rather than as a definite structure." *Watts,* slip op. at 4. Watts argues that the district court was wrong, contending first that because the sealingly connected limitation does not use the word "means," it is presumptively not a means-plus-function limitation. Next, Watts argues that the sealingly connected limitation is not purely functional because the claim describes a precise structure by reciting tapered internal and external threads. XL responds that the sealingly connected limitation is a means-plus-function limitation because it does not include structure capable of entirely performing the recited function. XL maintains that the tapered internal and external threads do not seal, but merely provide the location of the seal, and that the seal is created by misaligned taper angles. Finally, XL argues that public policy mandates that functional claims be restricted to the disclosed embodiments.

We hold that the sealingly connected limitation is not a means-plus-function limitation. First, the presumption applies that because the limitation does not recite

the word "means" it is not a means-plus-function limitation. Second, the presumption is not rebutted because the claim limitation recites or refers to terms that are reasonably well understood in the art as names for structure and which perform the recited function of sealing. Specifically, the claim limitation recites "a second end formed with tapered external threads" and refers to "a first end" with "tapered internal threads." These terms clearly have reasonably well understood meanings in the art as names for structure. Further, the specification makes it clear that the sealing function is performed with these interlocking threads. *See* '717 patent, col. 2, l. 48—col. 3, l. 14; *see also Unidynamics,* 157 F.3d at 1319, 48 USPQ2d at 1104 (looking to the specification to determine the scope of "spring means").

XL's arguments are unavailing. The threads represent the sole structural configuration effecting the seal and clearly are not mere indicators of the location of the seal as XL has argued. Although the use of misaligned taper angles, as well as a variety of other mechanisms, may increase the strength of the seal, the claimed sealing function is accomplished by the claimed threads. *See* '717 patent, col. 2, l. 48—col. 3, l. 66. Finally, because the limitations are not purely functional, XL's public policy argument is inapplicable.

The other two claims at issue include the same structural language, and the '411 specification includes the same discussion of how the seal is created and how its strength can be increased. Therefore, our holding that the sealingly connected limitation of claim 18 of the '717 patent is not a means-plus-function limitation also applies to claim 2 of the '717 patent and claim 4 of the '411 patent.

### C. Construction of the Sealingly Connected Limitation

■ Having held that § 112, paragraph 6 is not applicable, we proceed to a

---

3. As will be shown, the first functional statement disposes of the case. Therefore we need not, and do not, address the second functional statement. *See Carroll Touch, Inc. v. Electro Mech. Sys., Inc.,* 15 F.3d 1573, 1577 n. 3, 27 USPQ2d 1836, 1839 n. 3 (Fed.Cir.1993).

standard claim construction. In construing a claim, a court principally consults the evidence intrinsic to the patent, including the claims, the written description, and the relevant prosecution history. *See Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed. Cir.1996). While limitations contained in the specification are not ordinarily read into the claims, *see Intervet Am., Inc. v. Kee–Vet Labs., Inc.,* 887 F.2d 1050, 1053, 12 USPQ2d 1474, 1476 (Fed.Cir.1989), it is important to examine the specification. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979, 34 USPQ2d 1321, 1329 (Fed.Cir.1995) ("Claims must be read in view of the specification, of which they are a part."), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). One purpose for examining the specification is to determine if the patentee has limited the scope of the claims. *See O.I. Corp. v. Tekmar Co.,* 115 F.3d 1576, 1581, 42 USPQ2d 1777, 1781 (Fed.Cir.1997) (limiting claims because the specification described only non-smooth or conical passages and distinguished over the prior art based on these characteristics); *Wang Labs., Inc. v. America Online, Inc.,* 197 F.3d 1377, 1382–83, 53 USPQ2d 1161, 1164–65 (Fed.Cir.1999) (limiting claims to the only embodiment described, a character-based protocol, and specifically not encompassing a bit-mapped protocol); *Modine Mfg. Co. v. United States Int'l Trade Comm'n,* 75 F.3d 1545, 1551, 37 USPQ2d 1609, 1612 (Fed.Cir.1996) ("[W]hen the preferred embodiment is described in the specification as the invention itself, the claims are not necessarily entitled to a scope broader than that embodiment.").

■ The district court, in its alternative ruling, held that the sealingly connected limitation was expressly defined in the specification and prosecution history "as including only misaligned taper angles to effect a seal." *Watts,* slip op. at 4. According to the district court, the specification stated that the seal was created with misaligned taper angles and the prosecution history distinguished over the prior art with this sealing structure. *See id.*

Watts maintains, however, that the district court erred by reading in a limitation from the specification. Watts argues that the district court did not identify any term in need of a definition and it was therefore improper for the district court to import into the claims any definition from the specification. At oral argument before this court, Watts also argued that the specification was not, in fact, limiting, and that one of ordinary skill would be familiar with many ways of achieving a sealing connection. With regard to the prosecution history, Watts argues that it does not limit claim 18 because claim 18 was not pending at the time any amendments were made.

XL responds that both the specification and the prosecution history specifically limit the sealingly connected limitation to the disclosed embodiment, which utilizes misaligned taper angles. XL further responds that because the prosecution history distinguishes over the prior art by virtue of the misaligned taper angles, it is clearly applicable to claim 18, even though it was later added, and creates an estoppel.

We hold that the sealingly connected limitation is limited to structures utilizing misaligned taper angles. As explained below, we base our decision on the words of the limitation, the specific disclosure of the '717 patent, and the distinguishing remarks contained in both the specification and in the prosecution history of that patent.

The sealingly connected limitation includes the recitation that the "external threads [are] dimensioned such that one such joint may be sealingly connected directly with another such joint." '717 patent, col. 8, ll. 12–14. We hold that the claim language "dimensioned such that" is not clear on its face. Accordingly, we resort to the specification for clarification. We reject Watts' contention that we cannot consider the specification in this case. First, as just stated, the terms of the

sealingly connected limitation are not clear on their face. Second, even if they were clear on their face, we must consult the specification to determine if the patentee redefined any of those terms. *See Vitronics,* 90 F.3d at 1582, 39 USPQ2d at 1576.

The specification only describes one method in which "tapered external threads [are] dimensioned" to achieve the sealing connection, as required in claim 18 of the '717 patent. That method is to misalign the taper angles of the internal and external threads. *See* '717 patent, col. 3, ll. 3–14. Moreover, the specification actually limits the invention to structures that utilize misaligned taper angles, stating that "[t]he present invention utilizes [the varying taper angle] feature." '717 patent, col. 3, ll. 12–14.

We are not persuaded by Watts' two arguments, advanced at the oral hearing, that the specification was not limiting. First, Watts argued that one of ordinary skill would be aware of myriad ways to effect a sealing connection, such as by using o-rings. While this may be true, it does not overcome the fact that the specification specifies that the invention uses misaligned taper angles. *See O.I.,* 115 F.3d at 1581, 42 USPQ2d at 1781; *Wang,* 197 F.3d at 1382–83, 53 USPQ2d at 1164–65; *Modine,* 75 F.3d at 1551, 37 USPQ2d at 1612.

Second, at the oral hearing Watts also argued that the description of the preferred embodiment uses permissive language in describing the use of misaligned taper angles. We assume that Watts is referring to the specification language stating that "[s]o as to ensure a seal diameter for the connection of least diameter ... the taper of the external thread *may* be made slightly less than the taper of the internal thread." '717 patent, col. 4, ll. 64–67 (emphasis added). Examining the context of this statement and the entirety of the disclosure, we do not agree that this statement discloses an embodiment without misaligned taper angles. *See Amhil Enters. Ltd. v. Wawa, Inc.,* 81 F.3d 1554,

1559, 38 USPQ2d 1471, 1474 (Fed.Cir. 1996) (stating that the court must "review the entire specification"). The specification does not explicitly discuss an embodiment without misaligned taper angles and, as discussed earlier, actually limits the invention to embodiments with misaligned taper angles. *See* '717 patent, col. 3, ll. 3–14.

The invention is similarly limited in the prosecution history, in which Watts distinguished the primary reference based on the invention's misaligned taper angles. Watts stated that in the primary reference "'no thread interference' is claimed which teaches away from the present invention." It is clear that the phrase "no thread interference" refers to the interference caused by the misaligned taper angles. Thus, Watts cannot now maintain that his invention does not require misaligned taper angles. *See Biodex Corp. v. Loredan Biomedical, Inc.,* 946 F.2d 850, 862–63, 20 USPQ2d 1252, 1262 (Fed.Cir.1991) (affirming the use of prosecution history to construe a claim, while also noting the clear distinction between such a use and the doctrine of prosecution history estoppel which estops later expansion of a claim's protection under the doctrine of equivalents).

We find Watts' argument that the prosecution history does not apply to the sealingly connected limitation of claim 18 to be baseless. It is irrelevant in this case whether Watts' prosecution history remarks were directed to claim 18 specifically because there is no clear indication that they were not. *See Southwall Techs., Inc. v. Cardinal IG Co.,* 54 F.3d 1570, 1579, 34 USPQ2d 1673, 1679 (Fed.Cir.1995) ("[A]rguments made during prosecution regarding the meaning of a claim term are relevant to the interpretation of that term in every claim of the patent absent a clear indication to the contrary."). While Watts' remarks occur in a discussion of the rejection of claim 1, they are general in nature and apply to any claim that contains the sealingly connected limitation. This char-

acterization is reinforced by the fact that Watts had already canceled claim 1. Moreover, the context of his remarks suggests that he was distinguishing the primary reference from the newly presented claims, including claim 16 (which later became claim 2). Further, Watts stated in a subsequent response to the U.S. Patent and Trademark Office that newly added claim 32 (which later became claim 18) was "another embodiment of allowed claim 16."

Our analysis applies to all three claims in suit. The '411 specification includes the same statement limiting the invention to structures utilizing misaligned taper angles. *See* '411 patent, col. 5, ll. 23–32. The context of the prosecution history reveals that the remark which distinguishes the primary reference applies equally to all of the claims of the '717 patent. *See Southwall Techs.*, 54 F.3d at 1579, 34 USPQ2d at 1679. Further, the prosecution history of the '717 patent also applies to claim 1 of the '411 patent because: (1) the '411 patent is a continuation-in-part of the '717 patent; (2) claim 1 of the '411 patent also has a sealingly connected limitation; and (3) the prosecution history of the '411 patent contains nothing to the contrary. *See Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980, 52 USPQ2d 1109, 1114 (Fed.Cir.1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation."); *Southwall Techs.*, 54 F.3d at 1579, 34 USPQ2d at 1679.

### D. Non–Infringement of the Sealingly Connected Limitation

■ To find non-infringement, a district court must hold that the alleged infringer does not infringe any of the claims at issue either literally or under the doctrine of equivalents ("DOE"). *See, e.g., Jeneric/Pentron, Inc. v. Dillon Co., Inc.*, 205 F.3d 1377, 1383, 54 USPQ2d 1086, 1091 (Fed.Cir.2000). For any given claim, "in-fringement· is avoided when one element (or substitute falling within a permissible range of equivalents), is absent." *Senmed, Inc. v. Richard–Allan Med. Indus., Inc.*, 888 F.2d 815, 818 n. 5, 12 USPQ2d 1508, 1514 n. 5 (Fed.Cir.1989), *disapproved on other grounds by Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993).

■ After construing both of the functional limitations, the district court held that none of the claims in suit were infringed. *See Watts*, slip op. at 5. The district court based this decision "upon the undisputed and stipulated facts," which were briefly discussed earlier. *Watts v. XL Systems, Inc.*, No. 97–CV–261 (E.D.Tex. July 15, 1999)· (Order). At the oral hearing before this court, Watts argued that those stipulations require both of the functional statements to be limited to the disclosed embodiments before non-infringement is conceded. We agree that the first stipulation requires that both functional statements be construed as means-plus-function limitations before non-infringement is conceded under that stipulation. However, the second and third stipulations are not so limited, and we hold, based on those stipulations, that Watts has conceded as a matter of law that XL does not infringe any of the claims at issue as construed.

■ The second stipulation states, with emphasis added, that: "Specifically, as to literal infringement, XL Systems does not use *any* of the following, or equivalents thereof, described in the specifications of the '717 and '411 patents for the above-referenced claim limitations: (i) ... (ii) ... (iii) differing taper angles between connecting pipe ends; *or* (iv)...." This "stipulation, like any contract, presents a legal question that we address de novo." *Kearns v. Chrysler Corp.*, 32 F.3d 1541, 1545, 31 USPQ2d 1746, 1749 (Fed.Cir. 1994). We hold that the second stipulation unequivocally concedes that XL does not use differing taper angles. It is un-disputed that the misaligned taper angles

described in the specification employ different taper angles. Therefore, having construed the sealingly connected limitation to require the use of misaligned taper angles, we uphold the district court's conclusion that there is no literal infringement.

The third stipulation states, with emphasis added, that:

> As to infringement under the doctrine of equivalents, XL Systems does not use *any* structures that perform the same function, in the same way, to achieve the same result, or are insubstantially different from, the aforementioned structures described in the specifications of the '717 and '411 patents for the above-referenced claim limitations.

We hold that this stipulation disclaims any possible infringement under the DOE if the accused product does not utilize differing taper angles between connecting pipe ends. Given that XL does not use differing taper angles, we uphold the district court's conclusion that there is no infringement under the DOE.

## CONCLUSION

The district court incorrectly held claims 2 and 18 of the '717 patent and claim 1 of the '411 patent to be in means-plus-function format but correctly construed the sealingly connected limitation of the claims at issue to be limited to embodiments utilizing misaligned taper angles. Given this construction and the stipulations of the parties, we affirm the district court's judgment of non-infringement. The issue of invalidity, presented as an alternative argument and not as a cross-appeal, is deemed moot.

*AFFIRMED*