NOTE: Pursuant to Fed. Cir. R. 47.6, this disposition is not citable as precedent.  It is a public record.

# United States Court of Appeals for the Federal Circuit

04-1510, -1538

CARL LANDERS
and LANDERS HORIZONTAL DRILL, INC.,

Plaintiffs-Appellants,

v.

SIDEWAYS, LLC,

Defendant-Cross Appellant.

_____

DECIDED:  July 27, 2005

_____

Before LOURIE, RADER, and GAJARSA, Circuit Judges.

LOURIE, Circuit Judge.

Carl Landers and Landers Horizontal Drill, Inc. (collectively "Landers") appeal from the decision of the United States District Court for the Western District of Kentucky granting judgment of noninfringement of United States Patents 5,413,184, 5,853,056, and 6,125,949 in favor of Sideways, LLC ("Sideways").  Landers v. Sideways, LLC, No. 4:00CV-35-M (W.D. Ky. Mar. 11, 2004) ("Final Decision").  Landers also appeals from the grant of summary judgment denying enforcement of the license agreement's litigation indemnity provision.  Landers v. Sideways, LLC, No. 4:00CV-35-M (W.D. Ky. Oct. 1, 2003).  Sideways cross-appeals from the decision of the court granting judgment

that the asserted patents have not been proved to be invalid and that Sideways is liable for the cost of replacement equipment. Because we agree with the district court that (1) Sideways does not infringe the '184 patent, (2) Landers is not entitled to litigation expenses under the license agreement, (3) the '184, '056, and '949 patents have not been proved to be invalid, and (4) Sideways is liable for the cost of replacement equipment, we affirm in part. Because the district court improperly construed the "cutter head" limitation of the '949 patent and the "guide tracks" limitation of the '056 patent, we vacate in part the court's decision granting judgment of noninfringement and remand for further proceedings consistent with this opinion.

BACKGROUND

The '184, '056, and '949 patents are each entitled "Method of and Apparatus for Horizontal Well Drilling," and were issued to Carl Landers as inventor. The '056 and '949 patents issued from continuation-in-part applications of the application that also led to the '184 patent. The invention relates to a drill that can penetrate through a well casing and the surrounding earth in a horizontal direction. By drilling horizontally, the patented drill can remove oil and gas from reservoirs surrounding pre-existing wells. '184 Patent, col. 1, ll. 21-26. The preferred embodiment of the patented drill is shown below.

The basic components of the patented invention include upset tubing (18) which extends down the well casing (12). The upset tubing is connected to an elbow (20) that redirects either a ball cutter (22) or a nozzle blaster (46) from a vertical to a horizontal orientation. The drill operates by having the ball cutter first cut through the well casing and surrounding earth. Id., col. 1, ll. 61-66. The ball cutter is removed from the upset

tubing and replaced with a nozzle blaster.  By ejecting high pressure fluid into the initial cut made by a ball cutter, the nozzle blaster further extends the cut into the earth.  Id., col. 1, l. 61 to col. 2, l. 5.



FIG.5A,5B

Appellant Carl Landers is a resident of Kentucky and president of Landers Horizontal Drill, Inc., a Kentucky corporation.  Landers has been involved in the exploration and production of oil and gas since the 1970's.  On March 14, 1997, Landers and Appellee Sideways entered into a license agreement, under which Sideways was provided drilling equipment and granted the right to use the patented technology.  Sideways eventually stopped making payments required by the license agreement and the agreement expired.  On January 14, 2000, Landers filed suit against

04-1510, -1538                                            3

Sideways, alleging use of the patented technology without permission.[1]  Sideways denied Landers' allegations and counterclaimed, <u>inter alia</u>, that the patents were invalid.

After completing a bench trial, the district court entered judgment that Sideways did not infringe Landers' patents and that the patents were not proved to be invalid.  But the court also held that Sideways was liable for failing to pay for replacement equipment that it had received from Landers during the term of the license agreement.  In an earlier proceeding, on summary judgment, the court held that the license agreement did not require Sideways to indemnify Landers for expenses that Landers incurred in defending itself in a separate litigation (the "Howell litigation").

Addressing Landers' claim of infringement of the '184 patent, the district court noted that all claims in the patent contained the means-plus-function limitation "cutting means."  After reviewing the patent specification, the court determined that the only disclosed structure capable of performing the "cutting means" function was a ball cutter. The accused device, however, used a hole saw, which is a cylindrical structure with a serrated edge.  The court concluded that the two structures were not equivalent because, although the structures performed the same function, in order to create a hole in the well casing, they performed the function in substantially different ways.  <u>Final Decision</u>, slip op. at 31.  As the court observed, a ball cutter mills away at the well casing, whereas a hole saw cuts circumferentially through the casing, creating a disc.

With respect to the '056 patent, the district court determined whether the accused device met the "guide tracks" limitation in claim 1.  In attempting to construe the term

---

[1]  The suit was originally filed in state court for nonpayment and repossession of the technology covered by the license agreement, but removed to federal court based on diversity jurisdiction.

"guide tracks," the court first noted that neither the specification nor the prosecution history provided any guidance concerning what that term means. Therefore, the court construed the claim "so as to sustain its validity." Upon review of the prior art, namely, United States Patents 2,345,816 and 4,007,797, the court concluded that the term "guide tracks" cannot cover a pin and groove structure, otherwise the '056 patent would be invalid for obviousness. Id., slip op. at 38. Because the accused device had a pin and groove structure, the court held that claim 1 was not infringed, literally or equivalently.

With respect to the '949 patent, the district court determined whether the accused device met the "cutter head" limitation. In construing the term, the court stated that, although a person of ordinary skill in the art would have understood the term "cutter head" as encompassing a number of different cutting mechanisms, it did "not believe that they would have known which particular mechanism would be capable of performing the claimed function—i.e., penetrating through well casing." Id., slip op. at 45. Otherwise finding the term indefinable, the court construed the term as a means-plus-function limitation and identified the corresponding structure in the specification to be a ball cutter. For the same reasons that it found the accused device's hole saw not to meet the "cutting means" limitation of the '184 patent, the court also found the accused device did not meet the "cutter head" limitation. Id., slip op. at 46.

The district court also addressed whether the patents were invalid for lack of enablement. In rejecting Sideways' claim of lack of enablement, i.e., that the patents were inoperative because the disclosed ball cutter could not penetrate the well casing, the court cited conflicting evidence presented by the litigants. According to the court,

the evidence indicted that the ball cutter was successful part of the time. With this factual finding, the court held that Sideways did not meet its burden of proving facts constituting clear and convincing evidence that the patents were invalid.

The district court entered final judgment on May 4, 2004. Landers timely appealed and Sideways timely cross-appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

Claim construction is an issue of law, Markman v. Westview Instruments, Inc., 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc), that we review de novo, Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Whether an accused device infringes a claim, either literally or under the doctrine of equivalents, is an issue of fact that, following a bench trial, we review for clear error. WMS Gaming, Inc. v. Int'l Game Tech., 184 F.3d 1339, 1346 (Fed. Cir. 1999). Enablement is a question of law, based on underlying factual inquiries, that we review de novo. Enzo Biochem, Inc. v. Calgene, Inc., 188 F.3d 1362, 1369 (Fed. Cir. 1999).

I.    Infringement

A.    The '949 Patent

Landers asserts that the district court erred in construing the "cutter head" limitation of claim 33 as a means-plus-function limitation. Landers notes that the limitation does not contain the term "means," which presumptively indicates that it is not a means-plus-function limitation. Moreover, Landers argues that Sideways did not provide any evidence demonstrating that the term "cutter head" lacks sufficiently definite structure to justify its construction as a means-plus-function limitation. Instead, Landers

contends that the court should have given the limitation its ordinary and customary meaning.

We agree with Landers that the district court improperly construed the term "cutter head" as a means-plus-function limitation. "A claim limitation that does not use 'means' will trigger the rebuttable presumption that § 112, ¶ 6 does not apply." CCS Fitness, Inc. v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002) (citations omitted). The presumption may be rebutted by demonstrating that the claim term fails to recite sufficiently definite structure. Id. Despite Sideways' argument to the contrary, however, the presumption has not been rebutted here. Indeed, claim 33 contains several limitations providing structure to the cutter head, e.g., the cutter head must rotate, it is connected at one end to a "flexible shaft," and it must be moveable through the "inlet" and "outlet" of an L-shaped "passageway." Moreover, the court found that a person of ordinary skill in the art would have understood the term to "encompass[] a number of different cutting mechanisms." See Watts v. XL Sys., Inc., 232 F.3d 877, 880-81 (Fed. Cir. 2000) ("To help determine whether a claim term recites sufficient structure, we examine whether it has an understood meaning in the art.").

That the district court's construction, which limited "cutter head" to a ball cutter and its equivalents, is erroneous is further supported by dependent claim 34. Under the doctrine of claim differentiation, it is presumed that different claims will have different scopes. See Phillips v. AWH Corp., Nos. 03-1269, -1286, slip op. at 13 (Fed. Cir. July 12, 2005) ("the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim"). Claim 34 limits the "cutter head" recited in independent claim 33 to "a ball cutter." Thus,

while the doctrine of claim differentiation is not absolute, it works against the court's interpretation, which gives claims 33 and 34 the same scope.

To support the district court's interpretation of the term "cutter head" as a means-plus-function limitation, Sideways argues that the term should not be given its ordinary meaning. According to Sideways, the patentee experimented unsuccessfully with many different types of cutter heads and succeeded only with a ball cutter. This argument, however, misses the point. The relevant inquiry is how a person of ordinary skill in the art would have understood the simple term "cutter head," not whether other cutter heads succeeded or failed in cutting well casings. Moreover, we note that the patent specification does not indicate that only a ball cutter is capable of making a hole in a well casing.

We also reject Sideways' contention that the term "cutter head" was properly construed as a means-plus-function limitation because it lacks sufficiently definite structure. Specifically, Sideways argues that the patent specification and claims do not provide any structural detail concerning the cutter head. The law does not require, however, that the specification and claims contain exacting details of every structure recited in the claims. As we explained above, the relevant inquiry focuses on whether a person of ordinary skill in the art would have understood the limitation "cutter head" to have a sufficiently definite structure.

Unless the intrinsic evidence compels a contrary result, a claim limitation should be given its ordinary and customary meaning. Phillips, slip op. at 9. We note that Landers, in its appellate briefing, has provided a good starting point for this task on

remand by providing examples of "cutter heads" in the prior art.[2]  Appellants' Opening Br., at 23-25.  Accordingly, we vacate the district court's finding of noninfringement of the '949 patent, to the extent that that finding was based on an erroneous claim construction of the term "cutter head."  Furthermore, we remand for the court to give the term "cutter head" its ordinary and customary meaning,[3] and redetermine whether Sideways' device meets that limitation.

B.    The '056 Patent

Landers assigns error to the district court for giving the limitation "guide tracks," as it appears in claim 1, the same construction as it did in claim 2.  According to Landers, the guide tracks in claim 1 guide a nozzle blaster down the well casing, whereas the guide tracks in claim 2 guide a ball cutter.  Landers contends that because the claims cover different inventions, the limitation "guide tracks" should also be construed differently.  Landers also argues that the court erred in finding no infringement of claim 1 under the doctrine of equivalents.  Landers asserts that the court, in making that finding, improperly assumed that claim 1 would be invalid for obviousness if the scope of the term "guide tracks" was broad enough to cover the accused device's pin and groove structure.

---

[2]    Sideways argues that the district court did attempt to construe, to no avail, the term "cutter head" by applying its ordinary and customary meaning.  Appellee's Opposition Br., at 17 n.7.  But Sideways provides no citation showing, nor can we discern any from the record ourselves, the court engaging in any relevant analysis.

[3]    On remand, we caution the district court regarding its reliance on testimony from any patent attorney on technical issues, as opposed to issues concerning legal procedure.  In particular, a patent expert should not be permitted to construe claim terms unless he is first qualified as an expert in the pertinent art.

We do not agree with Landers that the district court erred by not construing the "guide tracks" limitation differently for claims 1 and 2. In fact, our case law explicitly states that "the meaning of a term in a claim must be defined in a manner that is consistent with its appearance in other claims in the same patent." CVI/Beta Ventures, Inc. v. Tura LP, 112 F.3d 1146, 1159 (Fed. Cir. 1997). Indeed, Landers provides no persuasive reasoning, nor can we discern from the patent ourselves, why the guide tracks used to guide a nozzle blaster, as required by claim 1, cannot also guide a motor for movement of the ball cutter, as required by claim 2.

We do, however, conclude that the district court clearly erred in finding that a pin and groove structure would not meet the "guide tracks" limitation under the doctrine of equivalents. The court's error stems from its not construing the "guide tracks" term before concluding that the accused device's pin and groove structure does not meet that limitation, either literally or equivalently. The court's rationale for proceeding in such a manner appears to be that claim construction was unnecessary because any construction in favor of Landers on "guide tracks" would invalidate the claim. As we explained in Nazomi Communications, Inc. v. ARM Holdings, PLC, 403 F.3d 1364 (Fed. Cir. 2005), however, this rationale is critically flawed.[4]

In Nazomi, the district court adopted a narrower claim interpretation in order to preserve the claim's validity. Id. at 1367-68. We criticized this approach of focusing on validity, and, in the process, glossing over the intrinsic evidence that must inform the court's claim construction. Id. at 1368. Pertinent to this appeal, we advised that "it is essential to understand the claims before their breath is limited for purposes of

---

[4] Although Nazomi issued after the district court rendered its decision on appeal, the case law expounded upon in Nazomi was established prior to its issuance.

preserving validity. "Otherwise the construing court has put the validity cart before the claim construction horse." Id., at 1368-69. Here, the court clearly did not construe the term. Thus, it should not have proceeded to narrow the limitation's construction for purposes of preserving validity. To borrow the Nazomi court's adage, there is a validity cart, but no claim construction horse.

Indeed, the flaw in the district court's analysis is further exposed by the possibility that there is only one sustainable construction for claim 1. Under such a circumstance it would be inappropriate for the district court to construe the claim to preserve its validity. See Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999) (claims should not be interpreted to preserve their validity if such an interpretation is contrary to the claim's language and the written description). Only after the court completes its claim construction analysis, which it has not done here, can it determine whether competing interpretations of "guide tracks" even exist, and only then is it permissible for the court to choose an interpretation that may preserve the claim's validity.

Accordingly, we vacate the district court's finding of noninfringement, both literally and under the doctrine of equivalents, of claim 1 of the '056 patent and remand for the court to give the "guide tracks" limitation its ordinary and customary meaning consistent with the intrinsic evidence. Moreover, the limitation "guide tracks" is not indefinable merely because the patent specification and the prosecution history do not provide a "clear description" of the term, as the district court appears to conclude. Final Decision, slip op. at 35.

C.

The '184 Patent

Landers asserts that the district court erred in its means-plus-function analysis of the "cutting means" limitation. According to Landers, the court unduly limited the range of equivalents for structures corresponding to the "cutting means" limitation to a tungsten carbide ball cutter. Under the proper analysis, taking into consideration that the claimed function is merely to "cut a hole," Landers argues that the accused device's hole saw is an equivalent structure.

Contending that insubstantial differences exist between the ball cutter and the hole saw, Landers notes that both cutters rotate, have roughened edges to facilitate cutting, and, due to those structural features, the result is a round hole being cut. Moreover, Landers assigns error to the district court's emphasis on how the two structures mechanically operate to cut a hole, namely, that a ball cutter mills a hole, whereas a hole saw cuts at the circumferential edge. According to Landers, nothing in the '184 patent places any importance on how a hole is cut through the well casing. Landers also argues that the court did not give enough weight to evidence demonstrating that a ball cutter and a hole saw were interchangeable structures.

We conclude that the district court did not clearly err in finding that the hole saw of the accused device does not meet the "cutting means" limitation. As the court recognized, a ball cutter and a hole saw are not identical structures. Moreover, the court properly found that milling is a significantly different way of cutting through a well casing from cutting a solid disc. Landers' remark that the patent does not stress the importance of the way a hole is cut through the well casing is not persuasive; indeed, it is not uncommon that one finds a patent without explicit statements limiting its range of

equivalents. Moreover, as the court noted, evidence of interchangeability does not necessarily warrant a finding of equivalents under 35 U.S.C. § 112, ¶ 6. Thus, we affirm the district court's final judgment of noninfringement of the '184 patent.

## II. Invalidity

On cross-appeal, Sideways challenges the district court's determination that the patents in suit are not invalid for lack of enablement under 35 U.S.C. § 112, ¶ 1. According to Sideways, the patents are invalid because a person of ordinary skill in the art would not have been able to successfully mill a hole through a well casing with the ball cutter disclosed in the patents. As support for its position, Sideways makes the factual contention that not a single person of skill in the art, including Landers and Sideways, has ever successfully made and used a ball cutter to mill a hole through a well casing.

For Sideways to prevail on its claim of invalidity for lack of enablement, however, it must demonstrate, at a minimum, that the district court's underlying finding of fact that "the ball cutter was successful some of the time" was clearly erroneous. Sideways has not met its burden. In reaching its finding of fact, the district court properly considered Messrs Pomeroy's and Woolridge's testimonies regarding their observations of the patented drill in the field and their accompanying inference that the drill was working successfully, i.e., that it increased production of oil. Sideways does not challenge the truth of these observations, but rather it quibbles with the fact that the two witnesses did not actually see the ball cutter drill a hole through the well casing. Sideways' quibble, however, does not leave us with a firm conviction that the district court has made an error in its finding of fact. Moreover, aside from recounting specific instances when the

ball cutter purportedly did not work, Sideways does not point to any evidence in the record proving that a ball cutter would be inoperative under all drilling conditions, confirming Sideways' failure of proof.  We thus affirm the court's determination that the patents have not been shown to be invalid.

    III.    <u>Contract Disputes</u>

We have considered Landers' remaining arguments on appeal, including those supporting its appeal of the district court's grant of summary judgment denying Landers' claim for expenses that it incurred in the Howell litigation, and we find them not persuasive.  We have also considered Sideways' remaining arguments on cross-appeal, including those supporting its cross-appeal of the court's decision holding Sideways liable for the cost of replacement equipment, and we find them not persuasive as well.  Thus, the district court's decision on these appealed issues arising from the license agreement is affirmed.

COSTS

Each party shall bear its own costs.